| | |
|---|---|
| Lyndalou Bullard,<br><br>    Plaintiff<br><br>v.<br><br>Las Vegas Valley Water District, et al.,<br><br>    Defendants | 2:15-cv-00948-JAD-VCF<br><br>**Order Granting Motion<br>for Summary Judgment**<br><br>[ECF Nos. 71, 81] |

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Lyndalou Bullard found herself out of work when the local water utility companies laid off more than 100 employees during a massive downsizing in April 2014. She now sues the Las Vegas Valley Water District, claiming that it breached her employment contract; discriminated against her based on her age, sex, and disability; retaliated against her for filing workplace-related complaints; and negligently hired, trained, supervised, and retained the supervisor responsible for firing her. The District moves for summary judgment on all of Bullard's claims, arguing that the evidentiary record simply does not support any of her theories.[1] Because the District has demonstrated that there is no genuine issue of fact on any claim and that it is entitled to judgment as a matter of law, I grant summary judgment in the District's favor and close this case.

**Background**

Bullard applied to the Las Vegas Valley Water District as an employee-development coordinator in October 1994.[2] While interviewing with the District's then-General Manager Pat Mulroy, Bullard was told that "[t]here's a lot of opportunity" at the District, and "[i]t's a

---

[1] ECF No. 71. I find this motion suitable for disposition without oral argument. L.R. 78-1.

[2] ECF No. 71-7 at 3–4 (32:13–33:6 of the transcript).

wonderful place to work and a wonderful place for retirement."[3] Bullard's offer letter did not promise her a job for life,[4] and she never signed an express, written employment contract.[5] Bullard understood Nevada to be an at-will-employment state, and she heard her supervisor Pat Maxwell and an employee-relations manager refer to employment at the District as "at-will."[6] She did not believe her position to be exempt from that at-will classification.[7]

Bullard received a copy of the employee handbook when she was hired.[8] That handbook contains a "bumping and layoff" policy that states that, "unless business needs dictate otherwise, employees . . . will generally be laid off in the following order: 1. temporary employees, 2. employees in the introductory period, and 3. regular employees."[9] So, an employee targeted for layoff may, under certain circumstances, "bump" another employee out of his job and take it:

> Employees who are subject to layoff but who have a greater length of service with the District than employees in another equal or lower-paid job classification may, if the District concludes that they are qualified, (1) be permitted to "bump" the least senior employee from the lower paid classification, (2) may be assigned elsewhere to available temporary work which they are qualified to

---

[3] *Id.* at 6–7 (36:25–37:2 of the transcript).

[4] *Id.* at 10 (43:19–25 of the transcript).

[5] *Id.* at 11–12 (44:17–45:6). This excerpt from Bullard's deposition merely states that she received and signed documents as part of the hiring process, but she doesn't remember if any of the documents were titled "Employment Contract" or "Employment Agreement."

[6] ECF No. 71-7 at 16 (59:1–19 of the transcript). The District offers formal evidentiary objections to various statements in Bullard's declaration. *See* ECF No. 83. Although I have thoughtfully and thoroughly considered these objections in evaluating whether the parties have met their respective burdens on summary judgment, I do not accept the District's tacit invitation to make formal rulings on each objection, checking the boxes that defense counsel have provided. *See id*. Counsel is cautioned that separating out objections in this manner is not helpful to the court and only delays the prompt resolution of summary-judgment motions. In the future, counsel should weave evidentiary objections into the summary-judgment argument itself.

[7] *Id.* at 17 (60:20–22 of the transcript).

[8] *Id.* (60:23–25 of the transcript).

[9] *Id.* at 23.

perform, or (3) if no such work is available, be laid off.[10]
But the first page of that handbook advised that "[n]othing in this handbook should be interpreted to grant an employee a right or entitlement to employment nor, once employed, a right or entitlement to continued employment or a guaranteed continuance of any of the working conditions, pay provisions, or benefits set forth in this handbook."[11] And language on the bumping-policy page reiterates that "the employment relationship at the District is considered to be 'at-will'" and is "subject to termination at any time for whatever reason."[12] Bullard contends, however, that the bumping policy "indicates there is an agreement and understanding" of "an employment contract between [herself] and the District."[13]

In 2011 and 2013, Bullard filed hostile-work-environment complaints against her supervisor, Maxwell.[14] In response to her 2011 complaint, the District's deputy general manager told Bullard in writing that he "share[d her] concerns," "believe[d] that the environment [needed] to change," and had "taken action that [he] deem[ed] appropriate to correct the problems [Bullard had] described."[15] An independent investigator looked into Bullard's 2013 complaint, and after reviewing the District's policies and interviewing 13 employees, the investigator found that Bullard's claim of "alleged harsh treatment from Pat Maxwell was not substantiated."[16]

Prior to 2014, the District was focused on expansion, but its mission changed in 2014 to focus more on operations management, customer service, and resources management.[17] In-class

---

[10] *Id.*

[11] ECF No. 71-1 at 4.

[12] *Id.*

[13] ECF No. 71-7 at 28 (100:10–18 of the transcript).

[14] *Id.* at 18 (62:1–7 of the transcript); ECF No. 71-11 at 11–12 (251:6–252:2 of the transcript).

[15] ECF No. 71-7 at 37.

[16] ECF No. 71-8 at 22–26.

[17] ECF No. 71-2 at 19–20 (72:1–12, 73:19–25 of the transcript).

employee development had dropped from 23,948 hours in 2008 to 9,705 hours in 2013,[18] so as part of that new mission, the District shifted its training and employee-development model from one that was in-class to one that was demand-based, online, and on the job.[19]  Maxwell decided that the existing employee-development team—Bullard's team—"was no longer essential for the District to carry out its" new mission.[20]  So, the whole team (save one member) was laid off when the District and its affiliate, the Southern Nevada Water Authority, reduced their workforce by more than 100 employees in April 2014.[21]  Bullard's job was not spared, and she sued the District.[22]

### Discussion

After two rounds of dismissal motions,[23] Bullard's case has been pared down to six claims against the District: (1) discrimination based on sex, age, and disability in violation of NRS 613.330; (2) retaliation in violation of NRS 613.340 for filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against Maxwell; (3) negligent hiring, training, supervision, and retention of Maxwell; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; and (6) age discrimination in violation of the Age Discrimination in Employment Act (ADEA).  The District moves for summary judgment on all of them.

---

[18] ECF No. 71-8 at 3, ¶ 8; 10, response to claim V.

[19] *Id.* at 3, ¶¶ 9–10.

[20] *Id.* at ¶ 11.

[21] *Id.*; ECF No. 71-6 at 19.

[22] Bullard is one of roughly a dozen employees who filed suit after the mass layoffs. *See also Acheampong et al. v. Las Vegas Valley Water District*, 2:15-cv-00981-RFB-PAL.  Although she originally sued her supervisor, too, the claims against Maxwell were dismissed. *See* ECF Nos. 43 (motion), 60 (minutes).

[23] *See* ECF Nos. 7 (original motion to dismiss); 29 (minutes of hearing); 31 (transcript of hearing); 36 and 43 (second round of motions to dismiss); 60 (minutes of hearing).

**A.  Summary-judgment standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show [that] there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[24] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[25] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[26]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[27] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; she "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[28]

**B.  Evaluating Bullard's claims**

***1.  Bullard makes no effort to defend her state-law-based employment claims.***

In her third claim for relief, Bullard alleges that the District violated NRS 613.330 by discriminating against her "with respect to her sex, age, disability, and protected activity."[29] Although section 613.330 prohibits an employer from discriminating against an employee based

---

[24] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[25] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[26] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[28] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[29] ECF No. 32 at 17.

on her race, age, or disability,[30] it does not prohibit retaliation for protected workplace-related complaints; NRS 613.340 does that. So I liberally construe Bullard's third claim as one based on NRS 613.330 *and* NRS 613.340. In her ninth claim for relief,[31] Bullard claims that the District was negligent in its hiring, training, supervision, and retention of Maxwell.[32] I address all of these claims first because Bullard did not respond to the District's arguments for summary judgment on any of them. Although I recognize that the failure to oppose a summary-judgment request does not compel summary judgment by default,[33] Bullard's silence has left her unable to sustain her burden on these claims.

### a. *Sex, age, and disability discrimination in violation of NRS § 613.330*

Section 613.330 of the Nevada Revised Statutes is a codified, state-law amalgam of three federal schemes: Title VII,[34] the Age Discrimination in Employment Act (ADEA),[35] and the Americans with Disabilities Act (ADA).[36] Claims under this Nevada statute are evaluated the

---

[30] NEV. REV. STAT. § 613.330.

[31] Bullard's complaint does not contain a sixth cause of action—it jumps from the fifth to the seventh—but I use her labels to avoid confusion. *See* ECF No. 32 at 18–19.

[32] *Id*. at 21–22.

[33] *See, e.g.*, *Heinemann v. Satterberg*, 731 F.3d 914, 916–17 (9th Cir. 2013) (courts may not apply failure-to-oppose rules to effect summary judgment by default).

[34] *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases."); *see also Apeceche v. White Pine Cnty.*, 615 P.2d 975, 977 (Nev. 1980) (holding that "NRS 613.330(1) is almost identical to § 703(a)(1) of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-2(a)(1)").

[35] *Liston v. Las Vegas Metropolitan Police Dep't*, 908 P.2d 720, 721 n.2 (Nev. 1995) ("The action was brought pursuant to NRS 13.330, Discrimination on the Basis of Age, which is based on 29 U.S.C. § 626(b) (1967), the Age Discrimination in Employment Act.").

[36] *Littlefield v. Nevada, ex. rel. Dep't of Public Safety*, 195 F. Supp. 3d 1147, 1152 (D. Nev. 2016) ("Nevada courts apply the ADA approach to plaintiff's state law claims.").

same way as their federal analogs.[37]  Before filing a civil lawsuit, "an employee alleging employment discrimination [must] exhaust her administrative remedies."[38]  "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge."[39]

### i. *Sex and disability discrimination*

The District argues that summary judgment is appropriate on the sex- and disability-based components of Bullard's discrimination claim because she filed an EEOC complaint for only age-based discrimination and retaliation.[40]  Indeed, on the EEOC's charge-of-discrimination form, in the section labeled "DISCRIMINATION BASED ON (Check appropriate box(es):)," Bullard checked only the "retaliation" and "age" boxes.[41]  She did not check any of the other boxes for race, color, sex, religion, national origin, disability, genetic information, or other.[42]  And in describing the specifics of her charge, Bullard explained that she was eliminated while two other Human Resources Managers—one in her mid 40s and another in his early 50s—maintained employment.[43]  Based on the checked boxes and the charge's description, sex and disability discrimination are not "like or reasonably related to the allegations contained in the EEOC charge."

Bullard makes no effort to deny that her failure to include sex and disability as bases for her EEOC charge justifies summary judgment on those portions of her NRS 613.330 claim.

---

[37] *See supra* notes 34–36.

[38] *Pope*, 114 P.3d at 280 (state-law claims need to be exhausted); *Lyons v. England*, 307 F.3d 1092, 1103–04 (9th Cir. 2002) (federal-law claims need to be exhausted).

[39] *Lyons*, 307 F.3d at 1104.

[40] ECF No. 71 at 21.

[41] ECF No. 71-8 at 6.

[42] *Id.*

[43] *Id.*

7

Because her failure to clear this exhaustion-of-administrative-remedies hurdle or demonstrate that she did not need to do so compels me to grant summary judgment for the District, I grant the motion on this basis and do not reach the District's arguments on the merits of Bullard's sex- and disability-discrimination claims.

### ii. Age discrimination

In the pathmaking case of *McDonnell Douglas Corporation v. Green*,[44] the United States Supreme Court established a burden-shifting framework for courts to apply to Title VII-discrimination claims.[45] "A discrimination complainant must first establish a prima facie case of disparate treatment."[46] "In general, a plaintiff must present evidence of 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such action was based upon race or another impermissible criterion.'"[47] If the plaintiff presents a prima facie case, "the burden shifts to the defendant to produce some evidence demonstrating a legitimate, nondiscriminatory reason for the employee's termination."[48] And if the defendant meets that burden, "any presumption that the defendant discriminated 'drops from the case,' and the plaintiff must then show that the defendant's alleged reason for termination was merely a pretext for discrimination."[49]

This burden-shifting framework has been extended to age-discrimination claims under the ADEA.[50] To establish a prima facie case of age discrimination in the terminated-due-to-a-

---

[44] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[45] *Id.* at 802.

[46] *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004) (internal citations and quotations omitted).

[47] *Id.* (quoting *Gay v. Waiters' Union*, 694 F.2d 531, 538 (9th Cir. 1982)).

[48] *Id.*

[49] *Id.*

[50] *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008); *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 812 (9th Cir. 2004).

reduction-in-workforce context, a plaintiff must show that she was "(1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) . . . discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'"[51] She also "must prove . . . that age was *the* 'but-for' cause of the employer's adverse action."[52] "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."[53]

The District argues that Bullard cannot present a prima facie case of age discrimination and, even if she could, she is unable to show that the District's legitimate, nondiscriminatory reasons for terminating her were merely pretext for age discrimination.[54] Bullard offers no response,[55] so she has failed to show that genuine issues of material fact exist to preclude me from granting summary judgment for the District on the age-discrimination portion of her NRS 613.330 claim. However, Bullard does oppose the District's summary-judgment request on her *ADEA-based*, age-discrimination claim, and I address those arguments in Section B(3) below. But, for now, I grant summary judgment for the District on Bullard's state-law-based age-discrimination claim.

      **b.**    **Retaliation for the 2011 and 2013 hostile-work-environment complaints in violation of NRS 613.340**

Nevada and federal law both prohibit employers from retaliating against an employee "because [she] has opposed any practice made an unlawful employment practice by [Title VII or

---

[51] *Diaz*, 521 F.3d at 1207; *see also Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990) ("We have held that the failure to prove replacement by a younger employee is 'not necessarily fatal' to an age discrimination claim where the discharge results from a general reduction in the work force due to business conditions.").

[52] *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012) (citing *Gross v. FBL Fin. Servs, Inc.*, 557 U.S. 167, 177 (2009) (emphasis added)).

[53] *Shelley*, 666 F.3d at 607.

[54] ECF No. 71 at 15–20.

[55] *See generally* ECF No. 77.

Chapter 613 of the Nevada Revised Statutes], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [those statutes]."[56] "To establish retaliation, the plaintiff must show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action."[57] Like in age-discrimination claims, "but-for causation is required to satisfy the necessary element of a 'causal link' between the protected activity and the adverse employment action."[58]

"[I]n order to support an inference of retaliatory motive, the termination must have occured 'fairly soon after the employee's protected expression.'"[59] The District argues that Bullard's 2011 and 2013 complaints are simply too attenuated from her 2014 termination to give rise to the inference that the events are connected.[60] And it notes that the Ninth Circuit has found nine months between protected activity and adverse action to be too long to allow the inference.[61] Bullard's last protected activity occurred sometime before the report investigating her claim was issued on September 4, 2013,[62] and it was based on an event in June 2013.[63] So more than seven and a half months passed between Bullard's 2013 complaint and her April 15, 2014, termination. This temporal chasm is too wide to create the inference that Bullard's inclusion in the District's

---

[56] 42 U.S.C. § 2000e-3(a); NEV. REV. STAT. § 613.340(1).

[57] *Van Pelt v. Skolnik*, 897 F. Supp. 2d 1031, 1044 (D. Nev. 2012), *aff'd sub nom. Van Pelt v. Nevada, ex rel. Nevada Dep't of Corr.*, 637 Fed. Appx. 307 (9th Cir. 2016).

[58] *Kennedy v. UMC Univ. Med. Ct.*, 2016 WL 4497062, at *5 (D. Nev. Aug. 25, 2016) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

[59] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (quoting *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009–10 (7th Cir. 2000)).

[60] ECF No. 71 at 25.

[61] *See* ECF No. 71 at 25 (citing *Manatt v. Bank of Amer.*, 339 F.3d 792, 802 (9th Cir. 2003)).

[62] *See* ECF No. 71-8 at 24.

[63] ECF No. 32 at ¶ 86.

massive layoffs was retaliation for her individual, protected activity.

Bullard offers no response to the District's argument.[64] So she has failed to show that genuine issues of fact exist on this claim. Accordingly, I grant summary judgment in the District's favor on Bullard's state-law-based retaliation claim.

### c. *Negligent hiring, training, supervision, and retention*

"The tort of negligent hiring imposes a general duty on an employer to conduct a reasonable background check on a potential employee to ensure that the employee is suitable for the position."[65] "An employer breaches this duty when it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities."[66] And an employer must use reasonable care in training, supervising, and retaining his employees "to make sure that the employees are fit for their positions."[67]

The District argues that summary judgment is appropriate on this claim because Bullard fails to show that Maxwell was unfit for her position. It points out that Bullard has not introduced "any evidence that the District hired Ms. Maxwell without conducting a reasonable background check, that she had 'dangerous propensities' or that she was otherwise unfit for the position."[68] Nor, it argues, can she show "that the District failed to train or supervise Ms. Maxwell, or that she was not 'fit for her position.'"[69]

Because Bullard has the burden of proof on this claim at trial, the District only needed to

---

[64] *See generally* ECF No. 77.

[65] *Vaughan v. Harrah's Las Vegas, Inc.*, 238 P.3d 863 (Nev. 2008) (citing *Burnett v. C.B.A. Security Service*, 820 P.2d 750, 752 (Nev. 1991)) (internal quotations omitted).

[66] *Id.* (citing *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996)).

[67] *Hall*, 930 P.2d at 99 (citing 27 Am. Jur. 2d *Employment Relationship* §§ 475–76 (1996)).

[68] ECF No. 71 at 27.

[69] *Id.*

11

identify these deficiencies to shift the burden to Bullard to show a genuine dispute.[70] But Bullard does not oppose or otherwise respond to the District's argument,[71] and the net result of her silence is that she has failed to raise a genuine, triable issue of fact to save this claim from summary adjudication. I therefore grant summary judgment in favor of the District on Bullard's ninth claim for relief.

### 2. *Bullard fails to show that she had an employment contract with the District.*

Bullard does make an effort to resist the District's summary-judgment attack on her remaining causes of action, the first of which is a claim for breach of contract. Although the presumption in Nevada is that an employment relationship is an at-will one, not governed by a contract, Bullard theorizes that she had an oral contract with the District for lifetime employment and employee-handbook-based entitlements that should have kept her off the chopping block. Those contracts were breached, she claims, when she was let go in 2014.[72]

It is undisputed that Bullard did not sign an express, written employment contract,[73] and she understood her job to be at will.[74] Nevertheless, she contends that statements made during her interview that the District is "a wonderful place to work and a wonderful place for retirement" created an oral employment contract.[75] She also theorizes that the District's hierarchical-termination and bumping policies in the handbook formed an implied employment contract that should have saved her from getting fired.[76] Finally, she contends that the District breached the covenant of good faith and fair dealing that Nevada law implies in those

---

[70] *Celotex*, 477 U.S. at 323–24.

[71] *See generally* ECF No. 77.

[72] ECF No. 32 at 14–15.

[73] *See supra* note 5 and accompanying text.

[74] ECF No. 71-7 at 30 (102:1–5 of the transcript).

[75] *Id.* at 6–7; ECF No. 77 at 5.

[76] ECF No. 77 at 6.

employment contracts when they terminated her due to her age and her hostile-work-environment complaints.[77] So she pleads a separate claim—her second cause of action—for breach of that implied covenant.[78]

### a. *Nevada's at-will employment presumption*

Few principles in Nevada law are more deeply established than the notion that the employment relationship is presumed to be at will.[79] "[A]t-will employment can be terminated without liability by either the employer or the employee at any time and for any reason or no reason"[80] as long as it does not offend strong public policy concerns.[81] "This presumption may be rebutted by proving, by a preponderance of the evidence, that there was an express or implied contract between the employer and the employee [that] indicates that the employer would only terminate the employee for cause."[82] And every contract under Nevada law carries with it the immutable, implied covenant of good faith and fair dealing.[83]

So, to prevail on her breach-of-contract and bad-faith claims, Bullard must show that she and the District had a for-cause termination relationship, and this, the District urges, she cannot do. A valid and enforceable contract requires "an offer and acceptance, meeting of the minds [of the two parties], and consideration."[84] And the District argues that Bullard cannot establish any

---

[77] ECF No. 32 at 15–16.

[78] *Id.*

[79] *See, e.g.*, *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 884–85 (Nev. 1999).

[80] *Martin v. Sears, Roebuck and Co.*, 899 P.2d 551, 553 (Nev. 1995).

[81] *K Mart v. Ponsock*, 732 P.2d 1364, 1369 (Nev. 1987).

[82] *American Bank Stationery v. Farmer*, 799 P.2d 1100, 1101–02 (Nev. 1990).

[83] *Pemberton v. Farmers Ins. Exchange*, 858 P.2d 380, 382 (Nev. 1993).

[84] *Meritage Homes of Nevada, Inc. v. FNBN-Rescon I, LLC*, 86 F. Supp. 3d 1130, 1139 (D. Nev. 2015) (citing *May v. Anderson*, 119 P.3d 1254 (Nev. 2005)).

of these required elements.[85]

### b. No oral contract was formed during the interview.

In support of her oral-contract theory, Bullard claims that she was told during her interview that she would be employed for life and that this promise was conveyed to her on several occasions.[86] She cites to the same record exhibit for each contention—her own declaration.[87] She attests that she remembers the "exact words" said during her interview "to this day:"[88]

> My interview with Pat Mulroy, I remember her exact words to this day, and I have it reflected in my documentation. She mentioned to me that HR needs a facelift and that there have been issues in human resources. She did not enumerate - - she did not, you know, talk about how in depth that was but a facelift was needed.
>
> "We would like to put the division there. We were also moving the safety division over to human resources for that facelift. I'm not sure if you belong there but we'll start there to begin with. **There's a lot of opportunity. It's a wonderful place to work and a wonderful place for retirement**." So I was encouraged longevity of a good job and lots of benefits.[89]

Bullard also claims that "Pat Mulroy told [her] in [her] interview, that after seven years of employment with the District, employees begin to receive a longevity bonus—two hundred dollars for every year in service."[90]

But Nevada law recognizes that "[g]eneral expressions of long term employment or job advancement do not convert an at-will employment contract to a termination[-]only[-]for[-]cause

---

[85] ECF No. 71 at 9.

[86] ECF No. 77 at 5:12–15.

[87] *Id.* (citing "Ex. A: ¶ 4–5" which corresponds to ECF No. 77-1 at 3).

[88] ECF No. 71-7 at 6.

[89] *Id.* at 6–7 (36:15–37:3 of the transcript) (emphasis added).

[90] ECF No. 77-1 at 3, ¶ 5.

14

contract."[91] Nowhere in Bullard's retelling of Mulroy's statements is there a promise of lifelong employment, and Bullard offers no evidence of other statements that she believes were promises for lifelong employment. So, Bullard simply fails to show that she had an oral employment contract with the District. The District is entitled to summary judgment on Bullard's breach-of-an-oral-contract theory.

### c. *The employment handbook is not an employment contract.*

Bullard also argues that an implied employment contract was created by the bumping provisions in the District's employee handbook.[92] She contends that the handbook "promise[s] employees that they will be laid off based on seniority" and guarantees the right to "bump a lower-paid employee" if they are subject to a layoff.[93] And she claims that the District violated this provision because it "disposed of almost the entire training staff, but retained one employee who was less qualified and who had less seniority than" she did.[94]

But Bullard overstates the plain language of the handbook's bumping-and-layoff policy, which shows that the District made no absolute promises. The provision is rife with qualifiers—it states that employees will "*generally* be laid off" according to seniority "*unless* business needs dictate otherwise.*"[95] And it affords the District wide discretion in its implementation:

> Employees who are subject to layoff but who have a greater length of service with the District than employees in another equal or lower-paid job classification may, *if the District concludes that they are qualified*, (1) be *permitted* to "bump" the least senior employee from the lower paid classification, (2) *may* be assigned elsewhere to available temporary work which they are qualified to

---

[91] *Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989).

[92] ECF No. 77 at 6.

[93] *Id.* at 7.

[94] *Id.* at 6.

[95] ECF No. 77-2 at 23 (emphasis added).

15

perform, or (3) *if no such work is available, be laid off.*[96]

So, the language of this bumping-and-layoff policy fails to support Bullard's theory.

But even if this policy could, as Bullard claims, create an "ambiguity" about whether her employment was contract-based or at will,[97] the handbook's express disclaimers removed any doubt. On its introductory page, the handbook states—twice—that "[t]he information contained herein shall not be deemed to create a vested or contractual right for any employee" and that "[n]othing in this handbook should be interpreted to grant an employee a right or entitlement to employment nor, once employed, a right or entitlement to continued employment or a guaranteed continuance of any of the working conditions, pay provisions, or benefits set forth in this handbook."[98] Even if an employee reading the handbook could have forgotten about the at-will nature of her employment by the time she got to the bumping-and-layoff policy on page 17, that policy itself contains the clear reminder that "the employment relationship at the District is considered to be 'at-will,' and thus subject to termination at any time for whatever reason"[99]:

> **LAYOFF AND RECALL PROCEDURE**
>
> **Bumping and Layoff:** Should it become necessary to implement a reduction in the workforce causing a layoff of employees, reasonable efforts are made to give advance notice to affected employees. Notice will be provided consistent with the requirements of the Worker Adjustment and Retraining Notification (WARN) Act.
>
> While the employment relationship at the District is considered to be "at-will," and thus subject to termination at any time for whatever reason, unless business needs dictate otherwise, employees from the affected job classifications will generally be laid off in the following order:
>
> 1. temporary employees,
> 2. employees in the introductory period, and
> 3. regular employees.
>
> When it becomes necessary to lay off a regular employee, skill, ability, and length of service are the determining factors. Where skill and ability are approximately equal, length of service governs.

---

[96] *Id.* (emphasis added).

[97] ECF No. 77 at 7.

[98] ECF No. 77-2 at 4.

[99] *Compare* ECF No. 77 at 6 *with* ECF No. 77-2 at 23.

While "employer practices and policies as reflected in an employee handbook" may infer "contractual obligations,"[100] "the employer can easily prevent this inference from arising by including in its handbook an express disclaimer of implied contractual liability."[101] And that is precisely what the District did here.[102] "Employment at-will is not automatically transformed to employment terminable for cause merely because of the existence of an employees' handbook explaining a company's policies regarding termination."[103] To allow otherwise "could discourage companies from publishing [employee] handbooks."[104]

The District's handbook unambiguously disclaims any possibility of converting at-will employment to for-cause employment on the basis of its provisions, and Bullard has not shown that the handbook formed the basis for an implied employment contract. So, I grant summary judgment in the District's favor on the remainder of Bullard's breach-of-contract claim. And because Bullard fails to show that an employment contract existed—and without a contract, there can be no implied covenant—I grant summary judgment for the District on her breach-of-the-implied-covenant claim, too.

### 3. *Bullard fails to show that she suffered discrimination based on her age and that the District's legitimate, nondiscriminatory reasons for terminating her were mere pretext for age discrimination.*

As I explained *supra* in Section (B)(1)(a)(ii), to survive summary judgment on her ADEA age-discrimination claim, Bullard must present a prima facie case of age discrimination. Then the District has an opportunity to provide a legitimate, nondiscriminatory reason for Bullard's

---

[100] *D'Angelo v. Gardner*, 819 P.2d 206, 209 (Nev. 1991).

[101] *Id.* at 209 n.4.

[102] Bullard even acknowledged in her deposition that she knew that she could be terminated at any time for whatever reason and that she was not "relying on the handbook as a basis for asserting that [she had] a contract with the District." ECF No. 82-2 (Bullard depo. transcript at 69:15–17).

[103] *Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 554 (Nev. 1995).

[104] *Id.*

termination. If it does, the burden shifts back to Bullard to show that the District's reasons were merely a pretext for age discrimination.[105] As part of presenting a prima facie case, Bullard must show that her age was *the* but-for cause of her termination.

The District argues that Bullard cannot satisfy the but-for-causation test, and even if she could, she cannot offer any evidence of pretext.[106] Bullard responds that she established a prima facie case because "the Water District needed and continues to need employees to perform [her] job functions."[107] But she cites no evidence in the record to support her claim, and the only evidence that I can find is her own declaration in which she states that, "[w]hile the projects [she] was responsible [sic] decreased because of the recession, they never ceased because of the recession and they continue regardless of the status of the economy."[108] This isn't enough.

In the Ninth Circuit, "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."[109] A "summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."[110] So, "[w]hen the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."[111] Even if I could conclude that Bullard would have personal

---

[105] *See supra* at page 8.

[106] ECF Nos. 71 at 14–20; 82 at 15–20.

[107] ECF No. 77 at 9.

[108] ECF No. 77-1 at 5, ¶ 31.

[109] *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

[110] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a genuine issue where the only evidence presented is uncorroborated and self-serving testimony.") (internal citations omitted); *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) ("Conclusory allegations unsupported by factual data will not create a triable issue of fact.").

[111] *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

knowledge of the District's operations since her departure—a qualification that she has not demonstrated in her affidavit[112]—these conclusory, fact-deficient attestations fail as a matter of law.

Even if Bullard had established a prima facie case of age discrimination, but-for causation is still lacking. Bullard bases this claim on two facts: (1) she was "the oldest HR manager" and (2) the only person in her department to survive the layoffs was younger than her.[113] But she admitted in her deposition that every person in her department was over 40, including that lone remaining employee.[114] So these facts fail to show—and she has not offered any other evidence to show—that she was treated differently than similarly situated co-workers because of her age. Bullard has thus failed to show that genuine issues of material fact exist to preclude me from entering summary judgment in the District's favor on her ADEA age-discrimination claim.[115]

## Conclusion

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the District's motion for summary judgment **[ECF No. 71] is GRANTED**.

IT IS FURTHER ORDERED that the parties' stipulation to consolidate this case with 2:15-cv-00981-RFB-PAL for all further purposes **[ECF No. 81] is DENIED as moot**.

. . .

---

[112] *See* ECF No. 77-1 at ¶¶ 28–32.

[113] ECF No. 71 at 16.

[114] ECF No. 71-11 at 3–4 (213:13–214:6 of the transcript).

[115] Because Bullard has not shown that she can present a prima facie case of age discrimination, and because I grant summary judgment on that basis, I need not (so do not) reach her mere-pretext argument.

The **Clerk of Court** is directed to **ENTER JUDGMENT** in favor of the Las Vegas Valley Water District and **CLOSE THIS CASE**.

DATED: February 5, 2018.

_____
U.S. District Judge Jennifer A. Dorsey